No. 22-3797

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

CARLOS DESHAWN BROWN,

*Defendant/Appellant.*
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
_____

BRIEF OF APPELLANT BROWN
_____

DEBORAH L. WILLIAMS
Federal Public Defender

Kevin M. Schad
Attorney for Appellant
Appellate Director
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
513.929.4834
Kevin_schad@fd.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE .............................................................................3

SUMMARY OF THE ARGUMENT ....................................................................9

ARGUMENT.......................................................................................................10

I.    APPELLANT BROWN'S RIGHT TO A SPEEDY TRIAL WAS
      VIOLATED .............................................................................................10

      A.    The first Speedy Trial violation – 10-day transportation .............11

      B.    The second Speedy Trial violation – proceedings after first
            denial...............................................................................................16

II.   THE COURT ERRED IN IMPOSING RESTITUTION FOR
      VICTIMS WHO WERE NOT PART OF THE OFFENSES OF
      CONVICTION.........................................................................................21

CONCLUSION ...................................................................................................24

CERTIFICATE OF COMPLIANCE..................................................................25


CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

## Cases

*Hughey v. United States*, 495 U.S. 411, 416, 110 S. Ct. 1979, 1982, 109 L. Ed. 2d 408 (1990)..................................................................22

*Sylvester v. United States*, 868 F.3d 503, 508 (6th Cir. 2017).........................11

*United States v. Black*, 819 F. App'x 309, 316 (6th Cir. 2020) ..............................21

*United States v. Brown*, 819 F.3d 800, 814 (6th Cir. 2016) ..............................19

*United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018)...........................10

*United States v. Ellis*, 938 F.3d 757, 763 (6th Cir. 2019).......................................21

*United States v. Felix*, 850 F. App'x 374, 381 (6th Cir. 2021) ..........................17

*United States v. Fowler*, 819 F.3d 298, 308 (6th Cir. 2016) .................................23

*United States v. Hills*, 27 F.4th 1155, 1202 (6th Cir. 2022) ..................................21

*United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015)...........................21

*United States v. Martin*, 780 F. App'x 248, 253 (6th Cir. 2019) ......................10

*United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1993)..........................17

*United States v. Patton*, 651 F. App'x 423, 426 (6th Cir. 2016) ......................19

*United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009)................................16

*United States v. Tinklenberg*, 563 U.S. 647, 660, 131 S. Ct. 2007, 2016, 179 L. Ed. 2d 1080 (2011) .......................................................11

*United States v. Tolliver*, 949 F.3d 244, 246–47 (6th Cir. 2020)....................16

*United States v. Turner*, 602 F.3d 778 (6th Cir. 2010)...............................13, 14

*United States v. White*, 920 F.3d 1109, 1112 (6th Cir. 2019)................................10

*United States v. Williams*, 753 F.3d 626, 636 (6th Cir. 2014) ..........................19

## Statutes

18 U.S.C. § 3161(h)(1)(F).......................................................................11

## JURISDICTIONAL STATEMENT

This appeal follows from the district court's judgment imposing a sentence of 38 months incarceration after a conditional guilty plea. (R.113, Judgment, PAGE ID # 880)  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  A timely notice of appeal was filed on September 20, 2022. (R.115, Notice of Appeal PAGE ID # 892)

## STATEMENT REGARDING ORAL ARGUMENT

Brown submits that the issues raised are sufficiently and fully contained in the brief, and therefore leaves to the Court's discretion whether oral argument is necessary.

Respectfully requested,

 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellant

## STATEMENT OF THE ISSUES

1. The district court should have granted Appellant Brown's motions to dismiss based upon violations of the Speedy Trial Act.  Marshals took in excess of 10 days to transport Appellant Brown to and from a competency evaluation in violation of 18 U.S.C. § 3161(h)(1)(F). Further, after denying the first motion to dismiss, more than 70 countable days had elapsed, due to the district court's delay in deciding the motion to dismiss and set new dates.

2. The district court improperly included restitution for "victims" who were not part of the offenses of conviction, requiring a remand.

## STATEMENT OF THE CASE

On April 24, 2019, Appellant Carlos Brown was named in a ten-count indictment filed in the Northern District of Ohio charging him with: three counts of unauthorized use of an access device, in violation of 18 U.S.C. § 1029(a)(2); four counts of bank fraud, in violation of 18 U.S.C. § 1344; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (R.1, Indictment PAGE ID # 1)  The Government alleged that Brown concocted a scheme where he stole the identity of family members, opened credit cards and other accounts in their name, and then used those accounts for personal purchases.  He would then call the banks who had issued the credit cards, make a fraud claim pretending to be the family member, and get the charges reversed. (R.125, Plea Hearing PAGE ID # 974)

An issue regarding Brown's competency was raised on December 19, 2019, and the district court ordered a competency evaluation. (R.30, Order PAGE ID # 93)  Because he was not in custody the court found "Brown shall be permitted to self-report to the nearest facility as designated by the Bureau of Prisons within 45 days of said designation. Defendant shall remain at the facility until completion of the examination, after which he shall be released on bond with the same terms and conditions currently being imposed."

3

However, Brown's bond was revoked on that same day, based upon conduct occurring after the hearing.

On December 23, 2019, the court held a bond hearing, at which time neither side advocated for Brown's release. The court determined "I'm going to order that he continue to be detained pending the mental health examination that I've ordered, so I'll put on an order which will modify the prior order which will keep intact the request for competency examination with the Bureau but will indicate that his bond has been revoked and that he should be admitted to a facility for the examination as soon as possible. That's what I intend to do." (R.58, Hearing PAGE ID # 265)  The court memorialized this decision in an order (R.34, Amended Order PAGE ID # 108), in which the court stated: "Defendant shall remain in custody and shall not be allowed to self-report to his examination. Instead, he must immediately report as soon as a facility is designated and the examination shall be conducted as soon as possible. As previously ordered, the report shall be submitted to the court within thirty (30) days of completion of said evaluation."

On January 10, 2020, Brown was designated to FMC Lexington for the evaluation. (R.63, Order PAGE ID # 308)   However, Brown did not arrive to the facility until February 7, 2020.  FMC Lexington completed its evaluation of

Brown on March 9, 2020; however, Brown was not released from custody. Instead, he was transported back to the Northern District of Ohio, arriving on March 25, 2020. (R.63, Order PAGE ID # 308)  Brown was eventually deemed competent to stand trial.

On July 6, 2021, Brown, acting pro-se, moved to dismiss the indictment pursuant to the Speedy Trial Act. (R.51, Motion PAGE ID # 205)  Brown contended that the time it took to transport him to and from his competency evaluation violated the 10-day rule set forth in 18 U.S.C. § 3161(h)(1)(F), resulting in over 70 includable days on the Speedy Trial Act clock.  The Government opposed this motion, conceding that while 49 days had passed on the clock[1], none of the time spent during the pendency of Brown's competency evaluation could be used as includable days. (R.52, Response PAGE ID # 236)

The court held two hearings on this motion (August 4, 2021, and August 25, 2021).  Although the court heard arguments on the motion, there was no testimony presented.  The Government did, however, provide an affidavit from Assistant Marshal Jeffrey Oleksiak, in which he outlined the transportation process for Brown. (R.60, Response PAGE ID # 278)

---

[1] The Government's Speedy Trial Act clock calculation of 49 days is set forth at R.52, PAGE ID# 234-236.

5

The court denied the motion to dismiss in a written order dated October 13, 2021.  The court found that the time from the competency evaluation onward was excludable under the Speedy Trial Act.  The court held that, although over 10 days passed from the court's December 23, 2019, competency order until Brown arrived at the BOP facility in February, 2020, "the time for transportation under § 3161(h)(1)(F) did not begin to run until January 24, 2020, the date when the facility was designated." (R.63, Order PAGE ID # 307)

On October 18, 2021, the district court set a telephone conference for November 3, 2021.  On that same day, Brown filed a renewed motion to dismiss under the Speedy Trial Act. (R.64, Motion PAGE ID # 316)  Brown contended that because there was no motion pending from October 13 through November 3, the Speedy Trial clock was again running, and over 70 includable days had passed.  Brown also argued that the court exceeded the 30 day "under advisement" limitation contained in the Speedy Trial Act when it took from August 25, 2021, until October 13, 2021, to decide the first motion to dismiss.

The district court denied this motion. (R.68, Order PAGE ID # 338)  The district court held that, contrary to the parties stipulation during the first

speedy trial litigation, only 46 days had passed at the time the first motion to dismiss was filed. (R.68, Order PAGE ID # 342)  Next, the court conceded that it had exceeded the "under advisement" clause of the Speedy Trial Act and added 19 days to the Speedy Trial clock. (PAGE ID # 342)  However, the court denied Brown's argument that the period between October 13, 2021, and November 3, 2021, should be included in the calculation, even though there were no motions pending.  Instead, the court post-hoc made a "end-of-justice continuance" finding, holding:

> the court held a Pretrial Status Conference in the case in a reasonable period of time following the court's order, and provided notice of the conference on October 18, 2021, just five days after the court's order. Second, this is consistent with the circumstances under which the court had routinely placed ends-of-justice continuances on the record while awaiting the next procedural steps in the case. (ECF Nos. 40, 48.) This is no different. In doing so, the court considered its schedule as well as anticipated when counsel might reasonably be available under the circumstances.

(R.68, Order PAGE ID # 342)

The parties eventually entered into a conditional plea agreement, whereby Brown retained the right to appeal the motions to dismiss.  In exchange, Brown agreed to plead guilty to counts one, four and eight of the

7

indictment. (R.112, Plea Agreement PAGE ID # 865)  The court accepted the plea on July 14, 2022.

Sentencing was held on September 14, 2022.  The parties had no objections to the advisory Guidelines, which were calculated at 24-30 months (BOL 16, Criminal History II), along with a consecutive two-year sentence for the aggravated identity theft count. (R.128, Sentencing PAGE ID # 1008)  The defense did object to the restitution, which caused the Government to put on a summary witness, FBI agent Alex Chuna. (R.128, Sentencing PAGE ID # 1023)  After hearing Chuna's testimony, the district court ordered restitution as follows: $92,706.39 to American Express; $60,113.58 to M.W.; $13,915.35 to Fifth Third Bank; $4,193.61 to Citibank; $2,020.76 to Synchrony Bank; and $4,756.38 to Dollar Bank. (R.113, Judgment PAGE ID # 885)  The court also imposed a sentence of 38 months incarceration, consisting of 14 months on counts one and four, with a consecutive 24 months on count eight. (R.113, Judgment PAGE ID # 881)

## SUMMARY OF THE ARGUMENT

### I.

Brown's statutory right to a Speedy Trial pursuant to the Speedy Trial Act was twice violated. First, the marshal took over 10 days to transport Brown to and from his competency evaluation. Second, the district court exceeded the thirty day "under advisement" rule for disposition of a motion and failed to timely set a trial date or make an "ends of justice" continuance finding after the clock again began to run. These violations require vacation of the convictions, and a remand to determine whether dismissal of the indictment should be with or without prejudice.

### II.

The district court imposed restitution for "victims" who were not named victims in the offenses of conviction. A remand for recalculation of the restitution is necessary.

## ARGUMENT

### I.    APPELLANT BROWN'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED

Appellant Brown's convictions must be vacated and dismissed with prejudice, due to violations of the Speedy Trial Act.  The first violation occurred when the marshals took over 10 days to transport Brown to and from a competency evaluation.  It was violated again after disposition of Brown's first Speedy Trial Act motion.

**Standard of Review**

"We typically review de novo the district court's interpretation of the Speedy Trial Act and its factual findings for clear error." *United States v. White*, 920 F.3d 1109, 1112 (6th Cir. 2019).

"[T]he Speedy Trial Act sets a 70-day time limit for bringing a defendant to trial." *United States v. Martin*, 780 F. App'x 248, 253 (6th Cir. 2019).  The clock runs on the day of indictment or initial appearance, whichever is later. *United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018).  "The Act also lists a number of events, or excludable delays, during which the Speedy Trial

10

Clock is tolled for the purposes of calculating the seventy-day period."
*Sylvester v. United States*, 868 F.3d 503, 508 (6th Cir. 2017).

### A. The first Speedy Trial violation – 10-day transportation

The Speedy Trial Act clock is tolled during delays "resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). Thus, when a court orders the removal or transportation of a defendant for a competency exam, any time over ten days transporting him is presumed unreasonable, and thus includable in the Speedy Trial clock calculation. *United States v. Tinklenberg*, 563 U.S. 647, 660, 131 S. Ct. 2007, 2016, 179 L. Ed. 2d 1080 (2011).

The marshals took 42 days to transport Brown to and from the competency evaluation. Here are the operative dates. The district court's initial order for a competency evaluation was made on December 19, 2019. The order was amended on December 23, 2019, with the district court making two findings: first, that he "must immediately report as soon as a facility is designated" and second, that "the examination shall be conducted as soon as

possible." (R.34, Amended Order PAGE ID # 108) On January 10, 2020, Brown was designated to FMC Lexington for the evaluation, but did not arrive to that facility until February 7, 2020.  Although FMC Lexington completed its evaluation of Brown on March 9, 2020, Brown was not released from custody. Instead, marshals transported Brown back to the Northern District of Ohio, where he arrived on March 25, 2020.

Allowing 10 days from the Amended Order pursuant to § 3161(h)(1)(F), Brown was due at FMC Lexington by January 2, 2020.  However, an additional 36 days accrued on the Speedy Trial clock until Brown was finally transported on February 7, 2020.  In addition, marshals had another 10 days after March 9, 2020, to return Brown to the Northern District of Ohio, which would have ended on March 19.  Brown was not returned until March 25, 2020, adding an additional 6 days on the Speedy Trial clock.  These 42 days, added to the 49 days the Government conceded had also elapsed on the clock by the time Brown's motion to dismiss was filed (R.52, Government Response PAGE ID # 236), results in 91 elapsed days – a clear violation of the Speedy Trial Act.

Despite this math, the district court denied Brown's motion to dismiss. There are two legal errors in the district court's findings denying relief.  First,

this Court in *United States v. Turner*, 602 F.3d 778 (6th Cir. 2010) determined that where a district court issues one order which covers designation and transportation, time begins running on the date of the order. *Id.* at 784. The district court found, however, that its order of December 23, 2019, was not the triggering date for § 3161(h)(1)(F)'s 10-day period of transportation; rather, "the ten-day non-excludable time period under § 3161(h)(1)(F) began to run once Defendant's facility was designated." (R.63, Order PAGE ID # 310) Further, the district court found that FMC Lexington was not "designated" until January 24, 2020, when the "BOP made its final designation." (PAGE ID # 311)

These findings are directly contrary to *Turner*. The amended order of December 23, 2019, ordering the evaluation and the transport of Brown for the evaluation, is one order for Speedy Trial purposes. This is because, as the Court in *Turner* noted, there is no second, separate transportation order. Had the district court intended separate orders, it could have done so. *Turner*, 602 F.3d at 784. At the time of the December 23, 2019, order, *Turner* had been precedent for nine years. More compelling is that later in the instant case, the district court *did* issue separate transportation orders. (R.72, Designation Order PAGE ID # 348, R.74, Transportation Order PAGE ID # 354) Thus,

the district court knew how to make separate orders if it chose.  It did not so choose on December 23, 2019.

The district court's second error was its finding that no designation occurred until January 24, 2020 – the date FMC Lexington was "finally" designated.  *Turner* instructs that a *particular* BOP location does not trigger the Speedy Trial 10-day period – only that a general BOP facility is designated.  *Turner* 602 F.3d at 784.  Yet the district court found that because its own order did not state a particular facility, no "designation" had occurred.  The district court's parsing out between when FMC Lexington was designated on January 10, 2020, and when it was "finally" designated on January 24, 2020, is immaterial to the Speedy Trial analysis.

The district court's reimagining of its December 23, 2019, order also belies the district court's original intent.  In December 2019 the court wanted the competency evaluation completed ASAP and did not want Brown out of district any longer than necessary.  At the hearing revoking Brown's release, the court stated "he should be admitted to a facility for the examination as soon as possible." (R.58, Hearing PAGE ID # 265)  The court further emphasized the urgency of transportation the written order: "Defendant  . . . must immediately report as soon as a facility is designated and the

14

examination shall be conducted as soon as possible." (R.34, Amended Order PAGE ID # 108)  Given these statements, it is clear that the court did not intend to allow the marshal's service to drag out the competency evaluation process.

Finally, the court erred in alternatively finding that the Government had rebutted the presumption that the delay was unreasonable.  The district court concluded that some of the "extra" delay was attributable to Brown's own conduct.  Although Brown was originally to self-report to FMC Lexington, his conduct caused his bond to be revoked, and thus, the BOP and marshal's offices had to "switch gears". (R.63, Order PAGE ID # 313)   Although Brown's misconduct caused his bond revocation, it cannot be true this caused any measurable delay.  Two facts bear this out: first, Brown was arrested the day that the court issued the initial competency evaluation order.  Second, the marshals and BOP could have been acting within hours once Brown was taken into custody.  Any delay could not have lasted longer than four days – the time between the order and amended order.  The district court also ignored that FMC Lexington was re-designated on January 10, 2020. (PAGE ID # 304)  As argued above, the "final" designation is meaningless.

15

The process used to transport Brown to and from his competency evaluation in 2020 violated the Congressional mandates for a speedy trial as set forth in 18 U.S.C. § 3161(h)(1)(F). Brown's convictions should be vacated, and this matter remanded for a determination of whether the dismissal of the indictment should be with or without prejudice.

### B. The second Speedy Trial violation – proceedings after first denial

The district court further delayed disposition of Brown's case after litigation of the first motion to dismiss for Speedy Trial Act violations, such that the Speedy Trial Act was violated a second time.

"[O]nce a defendant makes a *prima facie* showing that more than 70 days have passed, the government bears the burden of proving sufficient excludable time by a preponderance of the evidence." *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009). "If courts do not follow the Speedy Trial Act's 70-day rule, the remedy is dismissal (either with or without prejudice)." *United States v. Tolliver*, 949 F.3d 244, 246–47 (6th Cir. 2020).

As outlined in subsection A, Brown litigated a substantive Speedy Trial Act motion based upon a delay in transportation. The district court's resolution of that motion, and actions after its denial, again created a Speedy Trial clock problem.

16

On August 25, 2021, after two hearings on the motion, the district court took the matter under advisement. (R.94, Hearing PAGE ID # 582)  The Speedy Trial Act "requires 'prompt disposition' of the motion that is considered 'actually under advisement,'" and allows for thirty days after such motion is under advisement before the clock runs again. *United States v. Felix*, 850 F. App'x 374, 381 (6th Cir. 2021).  "A motion is 'actually under advisement' when 'the court receives all the papers it reasonably expects." *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1993).

Brown's speedy trial motion was under advisement as of August 25, 2021.  The clock began to run again on September 24, 2021.  The court did not issue an opinion until October 13, 2021.  Thus, another 19 days are attributable to the Speedy Trial clock calculation.  With the Government's admission that 49 non excludable days had passed up to the first motion to dismiss, this brought the clock to 68 days.

After the motion was disposed of on October 13, 2021, the clock began to run again.  Brown did not file another motion until November 3, 2021. Thus, between October 13, 2021, and November 3, 2021, another 20 days are attributable to the Speedy Trial clock, bringing the total to 88 days (not including the includable time set forth in section A of this brief).

17

Resisting this math, the district court held only 46 days had passed at the time of the first motion to dismiss, despite the fact that the court itself agreed with the earlier joint calculation. (R.68, Order PAGE ID # 342)  Next, the court conceded that it had exceeded the "under advisement" clause of the Speedy Trial Act and added 19 days to the Speedy Trial clock. (PAGE ID # 342)  However, the court denied Brown's argument that the period between October 13, 2021, and November 3, 2021, should be included in the calculation, even though there was no motion pending.  Instead, the court post-hoc made a "end-of-justice continuance" finding, holding:

> the court held a Pretrial Status Conference in the case in a reasonable period of time following the court's order, and provided notice of the conference on October 18, 2021, just five days after the court's order. Second, this is consistent with the circumstances under which the court had routinely placed ends-of-justice continuances on the record while awaiting the next procedural steps in the case. (ECF Nos. 40, 48.) This is no different. In doing so, the court considered its schedule as well as anticipated when counsel might reasonably be available under the circumstances.

(R.68, Order PAGE ID # 342)

"[U]nder the Speedy Trial Act a court must detail its reasons for finding that the ends of justice outweigh the best interests of the defendant and the public in a speedy trial and must do so at least by the time it rules on a

18

defendant's motion to dismiss under the Act." *United States v. Williams*, 753 F.3d 626, 636 (6th Cir. 2014). "[T]he district court must base its continuance on 'permissible factors' under the Act and may not invent after-the-fact findings to justify an ends of justice continuance that 'cannot fairly be said,' upon review of the record, to have served as its basis for granting the continuance." *United States v. Brown*, 819 F.3d 800, 814 (6th Cir. 2016).

Here, the district court's post-hoc findings were ineffective to exclude Speedy Trial clock time. The court noted that it had, 5 days after the speedy trial decision, set the matter for a telephone conference for November 3, 2021. But the mere setting of a hearing does not toll the Speedy Trial clock. Further, the court was on notice that Brown was claiming a speedy trial clock violation during the November 3 hearing. Yet the court did not make an end of justice continuance finding at that time. This Court has noted that "the best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *United States v. Patton*, 651 F. App'x 423, 426 (6th Cir. 2016). Had the court intended to grant an ends of justice continuance on October 13, 2021 (or even on November 3, 2021) the court could have made its record at that hearing. And finally, the court's decision references no consideration of Brown's right to a speedy trial

(which he had been trying to advocate for consistently for seven months to that point), or the interests of the public. These lack of findings supports the inference this was a post-hoc invention designed to circumvent an otherwise blown Speedy Trial clock.

In sum, Brown's right to a Speedy Trial pursuant to 18 U.S.C. § 3161 was violated not once, but twice. This Court should order the vacation of the convictions, and remand with instructions to hold a hearing on whether such dismissal should be with or without prejudice.

## II.   THE COURT ERRED IN IMPOSING RESTITUTION FOR VICTIMS WHO WERE NOT PART OF THE OFFENSES OF CONVICTION

The district court's imposition of $177,716.07 in total restitution was in error, as there was not sufficient evidence presented to prove this amount was the actual loss, or that all of the restitution related to the offenses of conviction.

**Standard of Review**

"We review whether restitution is permitted de novo, but the amount of restitution ordered is reviewed for abuse of discretion." *United States v. Hills*, 27 F.4th 1155, 1202 (6th Cir. 2022).

"[T]he MVRA mandates restitution 'in the full amount of each victim's losses,' where victim is defined as 'any person directly harmed ... in the course of the scheme.'" *United States v. Ellis*, 938 F.3d 757, 763 (6th Cir. 2019). "The government bears the burden of proving by a preponderance of the evidence the amount of a victim's loss." *United States v. Black*, 819 F. App'x 309, 316 (6th Cir. 2020). "Although the MVRA does not require courts to calculate restitution with exact precision, some precision is required—'[s]peculation and rough justice are not permitted.'" *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015)(internal citations omitted). The

restitution "statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 416, 110 S. Ct. 1979, 1982, 109 L. Ed. 2d 408 (1990).

At sentencing, the district court ordered restitution as follows: $92,706.39 to American Express; $60,113.58 to M.W.; $13,915.35 to Fifth Third Bank; $4,193.61 to Citibank; $2,020.76 to Synchrony Bank; and $4,756.38 to Dollar Bank. (R.113, Judgment PAGE ID # 885)  However, there are several problems with these restitution figures.

First, Brown only pled guilty to counts 1, 4, and 8 of the indictment. Neither Citibank nor Dollar Bank are mentioned as a victim in these counts. Second, Brown specifically challenged the restitution figures at sentencing, putting the Government to its burden of proof. (R.128, Sentencing PAGE ID # 1021)  In response, the Government put on the testimony of FBI Agent Chuna.  Chuna provided the court with a summary exhibit of the amounts he believed to be loss by the above-named victims and provided testimony of the overall scheme executed by Brown. (PAGE ID # 1026)  But most of the specific testimony was unrelated to the amounts alleged to have been part of the fraud.  For instance, Chuna discussed an incident where Brown defrauded Comerica bank out of $12,700. (PAGE ID # 1036)  But Chuna provided no

22

specific evidence or underlying documentation to show that the amounts alleged where a proximate result of Brown's fraud relating to the offense of conviction.

This is a case where "[t]he evidence supporting the restitution calculation is not sufficiently reliable." *United States v. Fowler*, 819 F.3d 298, 308 (6th Cir. 2016).  As such, the case should be remanded so the district court can amend the restitution order, given the evidence presented at the original sentencing.

## CONCLUSION

For the foregoing reasons, Brown respectfully requests this Court vacate the convictions and/or restitution order and remand this matter for further proceedings consistent with this Court's decision.

Respectfully Submitted,

DEBORAH L. WILLIAMS
Federal Public Defender

/s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellant
Appellate Director
Office of the Federal Public Defender
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
(513) 929-4834
Fax (513) 929-4842
Kevin_schad@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The relevant portions of the foregoing brief contain 5165 words in Century Schoolbook (14-point) type.  The word processing software used to prepare this brief was Microsoft Office 365.

/s/ *Kevin M. Schad*
Kevin Schad
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Assistant United States Attorney Justin Seabury Gould

/s/  *Kevin M. Schad*

Kevin Schad
Attorney for Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with 6 Cir. R. 30, Appellant hereby designates as "Relevant District Court Documents" the following documents filed in the district court and available via that court's electronic CM/ECF system:

| District Court Docket Number | Page ID# | Description of Document |
|---|---|---|
| 1 | 1-10 | Indictment |
| 30 | 93 | Order |
| 34 | 108 | Amended Order |
| 51 | 205-228 | Motion to Dismiss |
| 52 | 230-237 | Response to Motion |
| 54 | 240-243 | Reply to Response |
| 57 | 249-259 | Transcript Pretrial 12.19.19 |
| 58 | 260-266 | Transcript Bond Hearing 12.23.19 |
| 61 | 282-295 | Corrected Response in Opposition |

| | | |
|---|---|---|
| 62 | **296-299** | Reply to Corrected Response |
| 63 | **302-315** | Order Denying Motion to Dismiss |
| 64 | **316-320** | Renewed Motion to Dismiss |
| 66 | **322-330** | Response in Opposition |
| 67 | **331-337** | Reply |
| 68 | **338-343** | Order |
| 90 | **431-459** | Transcript Hearing 8.4.21 |
| 94 | **540-583** | Transcript Hearing 8.25.21 |
| 112 | **864-879** | Plea Agreement |
| 113 | **880-886** | Judgment |
| 115 | **892** | Notice of Appeal |
| 125 | **933-984** | Transcript Plea 7.14.22 |
| 128 | **999-1068** | Transcript Sentencing 9.14.22 |